UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GREG ADKISSON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:13-CV-505-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| | ) | *Lead Case Consolidated with* |
| | ) | |
| KEVIN THOMPSON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:13-CV-666-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| | ) | as c*onsolidated with* |
| | ) | |
| JOE CUNNINGHAM, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:14-CV-20-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| BILL ROSE, | ) | |
| Plaintiff, | ) | |
| v. | ) | No.: 3:15-CV-17-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| CRAIG WILKINSON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| ANGIE SHELTON, as wife and next of | ) | |
| Kin on behalf of Mike Shelton, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-420-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., et al., | ) | |
| Defendants. | ) | |

|                                                          | )  |                            |
|----------------------------------------------------------|----|----------------------------|
| JOHNNY CHURCH,                                           | )  |                            |
|          Plaintiff,                                      | )  |                            |
| v.                                                       | )  | No.:  3:15-CV-460-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., et al.,                  | )  |                            |
|          Defendants.                                     | )  |                            |
|                                                          | )  |                            |
|                                                          | )  |                            |
| DONALD R. VANGUILDER, JR.,                               | )  |                            |
|          Plaintiff,                                      | )  |                            |
| v.                                                       | )  | No.:  3:15-CV-462-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC.,                          | )  |                            |
|          Defendant.                                      | )  |                            |
|                                                          | )  |                            |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant Jacobs Engineering Group, Inc.'s Motion for Entry of a Lone Pine Case Management Order ([Doc. 71] in Adkisson, et al v. Jacobs Engineering Group, Inc., No. 3:13-CV-505; [Doc. 66] in Thompson, et al., v. Jacobs Engineering Group, Inc., No. 3:13-CV-666; [Doc. 46] in Cunningham et al., v. Jacobs Engineering Group, Inc., No. 3:14-CV-20; [Doc. 47] in Rose v. Jacobs Engineering Group, Inc., No. 3:15-CV-17; [Doc. 36] in Wilkinson, et al., v. Jacobs Engineering Group, Inc., No. 3:15-CV-274; [Doc. 34] in Shelton, et al., v. Jacobs Engineering Group, Inc., et al., No. 3:15-CV-420; [Doc. 35] in Church v. Jacobs Engineering Group, Inc., et al., No. 3:15-CV-460; and [Doc. 40] in Vanguilder v. Jacobs Engineering Group, Inc.. No. 3:15-CV-462), filed on June 16, 2016. The parties have fully briefed the issue, and on July 11, 2016, the parties appeared before the Court to present oral argument on the motion. For the reasons stated herein, the Court will **DENY** the motion.

In addition, due to the parties' agreement that the Plaintiffs shall have up to and including

September 1, 2016, to file a response to Jacobs' Motion to Dismiss, the Court **ORDERS** that the trials dates and deadlines for filing dispositive motions be **RESET**.

## I.    Procedural History

These cases arise out of the cleanup and remediation work that Defendant Jacobs Engineering Group, Inc. ("Jacobs") performed at the Kingston Fossil Fuel ("KIF") Plant following a December 2008 coal-ash spill.  Jacobs managed the on-site work pursuant to a contract with the Tennessee Valley Authority ("TVA"), which owns and operates the KIF plant. Individuals who worked on the coal-ash cleanup, along with some of their spouses, 71 Plaintiffs in total, filed suit against Jacobs claiming that the workers suffered negative health impacts as a result of Jacobs' failure to monitor the fly ash (which is the finer particles of coal ash), to protect the workers from the fly ash, and to disclose the fly ash's toxic nature.

The first three cases filed in this litigation – Adkisson, Thompson, and Cunningham – were consolidated for trial with Adkisson serving as the lead case since it was the first-filed case. [Doc. 35].[1]  On September 3, 2014, shortly after a Scheduling Order was entered, the District Court granted [Docs. 39 & 40] Jacobs' motion to dismiss all three cases.  On October 1, 2014, the District Court's decision was appealed, and on June 4, 2015, the Court of Appeals for the Sixth Circuit reversed the District Court's decision and remanded the cases for further proceedings.  [Docs. 41 & 42].  Jacobs subsequently filed a petition for writ of certiorari which the Supreme Court denied on February 1, 2016.  [Docs. 44 & 46].  During the pendency of these appeals, five additional lawsuits – Rose, Wilkinson, Shelton, Church, and Vanguilder – were filed or removed to federal court.  Because these later filed cases asserted similar facts and allegations set forth in Adkisson and its member cases, they were found to be related and a stay

---

[1] For ease of reference due to the number of cases involved, all document citations throughout this Memorandum and Order will be to Adkisson, et al v. Jacobs Engineering Group, Inc., No. 3:13-CV-505, since it is the first-filed case in this litigation.

was ordered pending resolution of the appeals.

On the same day the Supreme Court denied certiorari, the District Court lifted the stay in all eight cases and referred them to the undersigned to determine by report and recommendation whether all of the cases should be consolidated and the process by which the Plaintiffs should file amended complaints. Based upon the undersigned's recommendations, the District Court ordered [Doc. 18] on April 14, 2016, that all of the cases be consolidated for discovery and motion practice, but not for trial[2], that the Plaintiffs file amended complaints, and that the parties meet and confer for the purpose of presenting a Joint Discovery Plan with the goal of expediting preparation of the issues of causation and liability for possible bi-furcated adjudication.[3] By separate order, the District Court entered Amended Scheduling Orders in each of the eight cases, staggering trial dates so that the first trial would begin in January 2017 and the last trial would conclude in May 2017.

Jacobs subsequently filed the instant motion on June 16, 2016, requesting that the Court enter a Lone Pine case management order. The Plaintiffs' filed a response on July 5, 2016, objecting to the entry of a case management order beyond the Amended Scheduling Orders the District Court had entered.

## II.      Motion for Lone Pine Case Management Order

### A.      Positions of the Parties

Jacobs contends that the Plaintiffs' Amended Complaints generally allege that they suffered physical injuries based on their exposure to high levels of toxic substances in fly ash,

---

[2] With the exception of Adkisson, Thompson, and Cunningham, which were already consolidated for trial.
[3] The Court notes that McCarthy v. G.UB.MK Constructors et al, No. 3:14-cv-472, is another related case to this litigation. However, McCarthy was not consolidated with the other eight cases for the purposes of discovery and motion practice since the central claim in McCarthy is a retaliatory discharge claim, whereas the other eight cases assert broader tort claims. [Doc. 56]. Therefore, while Jacobs' Motion for a Lone Pine Case Management Order was filed in McCarthy as well [Doc. 79 in No. 3:14-cv-472], the Court will address the motion in McCarthy by separate order.

but fail to set forth specific facts that are central to the resolution of their claims. In this regard, Jacobs requests that the Plaintiffs, and their diagnosing physicians, produce the following information:

- a specific description of each area of the KIF worksite where Plaintiffs worked and were exposed to injurious substances (Plaintiff);
- a specific explanation of the circumstances of exposure to such substances, including the: (1) pathway of exposure (e.g., ingestion, inhalation, dermal contact), (2) date(s), time(s), and location(s) of exposure, (3) duration of exposure, (4) level or dose of exposure to particular toxic constituents, and (5) act(s) or omission(s) by Jacobs that caused the exposure (Plaintiff);
- the date of onset of the illness or injury, and the date when such injury was first diagnosed by a physician (Plaintiff);
- a specific description of the injuries or illnesses suffered by the Plaintiff that were caused by Jacobs' action(s) or omission(s) (physician);
- the specific toxic constituents of the ash that caused the injuries or illnesses (physician); and
- the scientific and medical bases for the physician's opinion (physician).

Jacobs maintains that without this basic information, it, along with the Court, will be precluded from efficiently determining whether there are facts supporting each Plaintiff's alleged exposure, injuries, or the causes of those injuries. The resolution, according to Jacobs, is for the Court to enter a Lone Pine case management order that would require the foregoing information so as to avoid costly discovery or summary judgment briefing. Jacobs avers that this case "is the exact type of mass tort litigation for which such orders are designed," and would advance the Court's goal of "expediting preparation of the issue of causation and liability." [Doc. 72 at 2, 6].

The Plaintiffs object to the entry of a Lone Pine order, arguing that such an order is unnecessary for a number of reasons. The Plaintiffs assert that the Amended Scheduling Orders and the Federal Rules of Civil Procedure sufficiently manage these cases, that a Lone Pine order is premature given the posture of the action and would be particularly onerous on the Plaintiffs

given the diverse injuries alleged in addition to increasing the costs in these cases, and that an external agency has already found a causal link at issue in these cases. The Plaintiffs cite five factors that courts typically weigh in assessing the appropriateness of issuing a Lone Pine order – posture of the action, the presence of peculiar case management needs of the action, the existence of agency decisions that may bear on the case, the availability of other procedural devices, and the type of injuries alleged and its cause – all of which the Plaintiffs contend weigh in favor of denying Jacobs' request for a Lone Pine order.

### B.    Analysis

Deriving its name from the seminal case <u>Lore v. Lone Pine Corp.</u>, No. L-33606-85, 1986 WL 637507, at \*1 (N.J. Super. Ct. Law Div. Nov. 18, 1986), Lone Pine orders "are pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim." <u>Steering Comm. v. Exxon Mobil Corp.</u>, 461 F.3d 598, 604, n.2 (5th Cir. 2006). In <u>Lone Pine</u>, the court issued the unique case management order which required the plaintiffs, who had sued 464 defendants for personal injuries and property damage arising out Lone Pine's landfill operation, to put forth expert evidence of the injuries caused by the landfill. No. L-33606-85, 1986 WL 637507, at \*1. The necessity of such an extraordinary case management order arose out of the need to organize litigation involving such a large number of parties. <u>Id.</u> When the plaintiffs failed to comply with the case management order, the court dismissed the lawsuit. <u>Id.</u>

Due to the complexity and size of a case, Lone Pine orders are typically issued in the early stages of litigation and require "that a plaintiff substantiate his cause of action before embarking on a costly lawsuit with numerous defendants and attorneys." <u>Morgan v. Ford Motor</u>

Co., No. 06-1080JAP, 2007 WL 1456154, at *1 (D.N.J. May 17, 2007); see In re Digitek Prod. Liab. Litig., 264 F.R.D. 249, 255 (S.D.W. Va. 2010) (observing that Lone Pine orders "essentially require[e] plaintiffs to produce a measure of evidence to support their claims at the outset"). By requiring plaintiffs to set forth some evidence of causation early on, Lone Pine orders have the effect of "cull[ing] potentially meritless claims and streamlin[ing] litigation in complex cases." Baker v. Chevron USA, Inc., No. 1:05-CV-227, 2007 WL 315346, at *1 (S.D. Ohio 2014).

The Sixth Circuit Court of Appeals has not had occasion to address the nature and appropriateness of Lone Pine orders. However, Federal Rule of Civil Procedure 16(c)(2)(L) grants courts considerable discretion in "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." As pointed out by the Plaintiffs, courts generally look to five factors in determining whether a Lone Pine order is appropriate. These factors include: (1) the posture of the action, (2) any peculiar case management needs of the action, (3) external agency decisions that may bear on the case, (4) the availability, by statue or rule, of other procedural devices, and (5) the type of injury alleged and its causes. See Manning v. Arch Wood Prot., Inc., 40 F. Supp. 3d 861, 864 (E.D. Ky. 2014); Roth v. Cabot Oil & Gas Corp., 287 F.R.D. 293, 298 (M.D. Pa. 2012); In re Digitek Prod. Liab. Litig., 264 F.R.D. at 256. Having carefully considered the parties arguments in light of the foregoing factors, the Court finds that a Lone Pine order is not warranted at this time.

The first factor, posture of the action, weighs in favor of denying Jacobs' request. The Court observes that generally, Lone Pine orders are disfavored in the early stages of the proceedings where no meaningful discovery has taken place. See Simeone v. Girard City Bd. of

Edn., 872 N.E.2d 344, 352 (Ohio Ct. App. 2007) ("The timeline of this case is of concern because it is apparent that appellants were not given the full range and benefit of discovery before the Lone Pine order was issued," and observing that "[i]n most of the Lone Pine cases we have reviewed in coming to this conclusion, the Lone Pine order was issued only after one party was refusing to comply with discovery requests . . . ."). Here, the parties conceded during the July 11 motion hearing that beyond the initial disclosures provided by the Plaintiffs, no further discovery has taken place. While Jacobs argued that Plaintiffs' initial disclosure were inadequate, they have not formally objected to them, nor has Jacobs alleged that Plaintiffs have refused to comply with the usual practices of discovery or any other specific discovery request Jacobs has made.

Instead, Jacobs argued that going through the normal discovery process would be too long and costly, given the number of Plaintiffs. Jacobs ignores, however, the cost that would be imposed upon Plaintiffs to secure declarations from their physicians this early in the case. Moreover, requiring Plaintiffs to put on substantial proof of causation at this juncture places the Plaintiffs in the peculiar position of having to prove an element of their case at the outset of litigation without having the benefit of conducting discovery.[4]   The Court is confident that expediting preparation of the issue of causation and liability may be sufficiently accomplished by the parties under the usual mode and safeguards provided by the Federal Rules of Civil Procedure. Moreover, the Court is prepared to address any discovery dispute that may arise and rule on dispositive motions challenging the proof set forth by the Plaintiffs.

The Court is also not persuaded by Jacobs' reliance on Acuna in arguing that the

---

[4] Indeed, Jacobs' counsel argued during the July 11 motion hearing that a Lone Pine order would make the Plaintiffs "put up or shut up," a standard of proof used to adjudicate motions for summary judgment, not the adequacy of a complaint. See Ross v. City of Gatlinburg, Tenn., 327 F. Supp. 2d 834, 839 (E.D. Tenn. 2003) ("A motion for summary judgment requires the non-moving party to 'put up or shut up' on a critical issue.") (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989)).

8

information it seeks through a Lone Pine order is "basic information that [Plaintiffs] are required to possess before filing their claims." [Doc. 72 at 5] (internal quotations omitted). In Acuna, the Fifth Circuit Court of Appeals observed that the lower court's issuance of a Lone Pine Order simply required information plaintiffs should have had prior to filing suit pursuant to Federal Rule of Civil Procedure 11(b)(3). 200 F.3d at 340. In this regard, "[e]ach plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries." Id. The Court finds the Amended Complaints here sufficiently place Jacobs on fair notice of the nature of what the claims are and the grounds upon which the claims rest. Although the Amended Complaints in at least Adkisson, and Wilkerson, do not set forth a *specific* injury sustained, the Plaintiffs' initial disclosures [Doc. 80-1] provide this information. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 11 does not require conclusive proof of causation prior to filing suit." Manning, 40 F. Supp. 3d at 865.

Jacobs also argues that the Plaintiffs should have already had the information it now seeks because the first of these cases, Adkisson, was filed three years ago. Jacobs fails to appreciate, however, that Adkisson, along with its member cases, were initially disposed of at the early stages of litigation when the District Court granted Jacobs' motion to dismiss only a month after the Scheduling Order was entered. Moreover, after the District Court dismissed the three member cases, the Plaintiffs appealed the judgment, causing a stay to be issued in the five other related cases which had only recently been filed or removed to federal court. Thus, limited discovery, if any, had yet to take place in any of the eight cases now before the Court.

As to the second factor, whether the case has peculiar case management needs, the Court

finds that this factor likewise disfavors a Lone Pine order. Courts are generally more inclined to issue Lone Pine orders in cases involving hundreds or more plaintiffs and/or defendants. See Acuna, 200 F.3d at 337 (Lone Pine order entered in case involving over 1,600 plaintiffs); Modern Holdings, LLC v. Corning Inc., No. CV 13-405-GFVT, 2015 WL 6482374, at *3 (E.D. Ky. Oct. 27, 2015) (upholding a magistrate judge's issuance of a Lone Pine order where plaintiffs sought class action status, with a proposed class broad enough to include four subclasses); Baker, No. 105-CV-227, 2007 WL 315346, at *1 (Lone Pine order issued where 360 residents brought suit against Chevron and its various subsidiaries); Lone Pine Corp., No. L-33606-85, 1986 WL 637507, at *1 (due to 464 defendants involved in the case, "the Court determined that . . . organization was required to manage the case"). In other words, party numerosity presents unique case management challenges. Here, 71 Plaintiffs and one Defendant are involved. In fact, six of the eight cases have only one to three named Plaintiffs. The complexities presented when hundreds or more litigants are involved is not present here.

While Jacobs asserts in its brief that "this is the exact type of mass tort litigation for which [Lone Pine] orders are designed," [Doc. 72 at 6], Jacobs does not explain what about this litigation qualifies it as such. The crux of Jacobs' argument in support of a Lone Pine order is that the Plaintiffs have failed to plead sufficient facts in their Amended Complaints regarding the particular injury sustained, the particular toxic substance that caused the injury, the specific levels or doses of the toxic substance, and the precise date, location, and duration of exposure. These alleged shortcomings say nothing about the size or complexity of the litigation.

Jacobs further points to the District Court's decision in In re Tennessee Valley Authority Ash Spill Litig., 805 F. Supp. 468, 482 (E.D. Tenn. Aug. 2, 2011), in which summary judgment was granted against plaintiffs, who were residents and property owners within the vicinity of the

ash spill, because they were unable to establish a causal "link between exposure to the ash and a specific personal injury, respiratory symptoms, or emotion distress." Jacobs avers that the Plaintiffs' Amended Complaints in the present litigation "suffer from the same factual and informational defects that led the Court to grant summary judgment" to TVA, and that such defects preclude the Court in the present matter from efficiently determining whether there are facts supporting the Plaintiffs' alleged exposure, injury, and cause of those injuries. [Doc. 72 at 4]. If the Plaintiffs' proof is indeed deficient to establish a causal nexus as argued by Jacobs, the District Court may dispose of the Plaintiffs' claims *at the summary judgment stage*, just as it did in In re Tennessee Valley Authority Ash Spill Litig. While "a Lone Pine order can in some cases be a useful **case management tool**[], it should not be considered a substitute for or another species of a **motion for summary judgment**." McManaway v. KBR, Inc., 265 F.R.D. 384, 388 (S.D. Ind. 2009) (emphasis in the original).

The third factor, whether external agency decisions exist that may impact the merits of the case, is a neutral factor that neither weighs for or against granting a Lone Pine order. The Plaintiffs cite to a Public Health Assessment ("PHA") [Doc. 80-2] that was prepared by the Tennessee Department of Health in September 2010 in response to the KIF coal ash spill. The Plaintiffs contend that the PHA will impact the merits and outcome of this litigation because the extensive report evaluates the exposure and health effects upon people exposed to fly ash contamination, the potential pathways of exposure, and the known toxic chemicals found in coal ash. Jacobs argued during the motion hearing that the District Court already ruled in In re Tennessee Valley Auth. Ash Spill Litig., that the PHA is not enough to establish causation.

In re Tennessee Valley Auth. Ash Spill Litig., TVA relied on PHA's conclusion that "the coal ash at the site of the KIF coal ash release should not have caused harm to the community's

health" in arguing that no plaintiff claiming personal injury or emotional distress had shown he or she was actually exposed to potentially toxic constituents bound up in the ash through a valid transmission pathway or exposed in such a manner or to such a level that could cause personal injury or emotional distress. 805 F. Supp. 2d at 481. Although the District Court did not explicitly state the level of deference the PHA had on its decision, it did ultimately conclude that the plaintiffs had failed to "put forth evidence of a causation link between exposure to the ash and a specific personal injury, respiratory symptom, or emotional distress." Id.

This Court observes that while the PHA concluded that the fly ash was not expected to harm the community's health, it also concluded that it could be harmful in situations where contact was "longer-term." [Doc. 88-2 at 79-89]. The Plaintiffs in this litigation claim exposure while working as on-site employees at the KIF toxic spill remediation-site. They also claim that they were denied safety gear and equipment that could have otherwise protected or limited their exposure to fly ash. However, based upon the pleadings and documents filed thus far, it is unclear to the Court the length of time each Plaintiff was employed at the remediation-site, and therefore, it is unknown whether each Plaintiff was potently exposed to fly ash for a "longer-term." Accordingly, the impact that the PHA may have in this case is simply not clear at this time. Therefore, the Court finds that this third factor is a neutral factor that does not tip the balance in either direction.

The fourth factor is the availability of other procedural devices by statute or rule. The Court finds that this factor weighs in favor of denying Jacobs' request. As explained by the Southern District of West Virginia:

> Given a choice between a "*Lone Pine* order" created under the court's inherent case management authority and available procedural devices such as summary judgment, motions to dismiss, motions for sanctions and similar rules, I believe it more prudent to

yield to the consistency and safeguards of the mandated rules especially at this stage in this litigation. Claims of efficiency, elimination of frivolous claims and fairness are effectively being addressed using the existing and standard means. *Resorting to crafting and applying a Lone Pine order should only occur where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation.* We have not reached that point.

In re Digitek Prod. Liab. Litig., 264 F.R.D. at 259 (second emphasis added). Here, the normal procedural devices have neither been exhausted nor shown to be inadequate in accommodating the issues presented in this litigation. Jacobs has not raised any formal objection to the sufficiency of the Plaintiffs' initial disclosures which Plaintiffs contend set forth much of the factual information Jacobs seeks to obtain through a Lone Pine order, no further discovery has taken place, and no request for a more definitive statement has been made, all of which could adequately test the sufficiency of the Plaintiffs' Amended Complaints. Additionally, the Court observes that Jacobs has filed a Motion to Dismiss [Doc. 69], which also serves as a procedural vehicle for disposing of deficient claims. See Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc., 803 F. Supp. 1251, 1255 (E.D. Mich. 1992), aff'd, 32 F.3d 989 (6th Cir. 1994) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.") (citing Elliot Co., Inc. v. Caribbean Utilities Co., Ltd., 513 F.2d 1176 (6th Cir.1975)). The Court further observes, as already mentioned above, that issuing a Lone Pine order at this juncture would deny the Plaintiffs the protection of the Federal Rules of Civil Procedure by requiring them to set forth the same level of proof that a motion for summary judgment would require but without the benefit of first conducting discovery. See Simeone, 872 N.E.2d at 350. ("When the Lone Pine order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards that the Civil Rules of Procedure supply.").

Finally, the last factor, the type of injury alleged and its cause, also weighs against granting a Lone Pine order. As recognized in Manning, "it is likely that causation issues will be highly contentious and involve much expert testimony. Daubert hearings and motion *in limine* practice are available to challenge such evidence." 40 F. Supp. 3d at 864.

In conclusion, the Court finds that Jacobs has not demonstrated that this litigation presents case management needs that are so extraordinarily unique as to require deviation from the usual procedural vehicles and case management tools utilized in civil actions. Should the discovery process become burdensome later down the road, the Court is willing to entertain a renewed motion for a Lone Pine order if and when appropriate. Until then, the Court finds that Jacobs' request for a Lone Pine order before the parties have had the benefit of engaging in discovery is premature and not well-taken.

## II. New Trial Dates and Deadlines

At the conclusion of the July 11 motion hearing, the Court discussed the need to continue the trial dates due to the parties' agreement [Doc. 78] that the Plaintiffs would have up to and including September 1, 2016 to respond to Jacobs' Motion to Dismiss. Because the first trial date in these cases is set to take place on January 9, 2017, with all remaining trial dates staggered every two weeks, the dispositive motion deadline for several of the cases will expire prior to the deadline for filing a response to Jacobs' Motion to Dismiss. In addition, the District Court will need sufficient time to rule on the Motion to Dismiss, as well as any dispositive motions filed, and the parties will need adequate time to prepare for trial in light of the District Court's rulings. These matters cannot be concluded before the trials begin in January 2017, thereby necessitating the need to continue the trial dates in this litigation.

While the Court had scheduled new trial dates during the July 11 motion hearing,

member cases <u>Adkisson</u>, <u>Cunningham</u>, and <u>Thompson</u>, which have been consolidated for trial, were inadvertently assigned separate trial dates. Therefore, the Court **RESETS** the trial date in <u>Adkisson, et al.</u>, No. 3:13-CV-505, and member cases <u>Thompson, et al.</u>, No. 3:13-CV-666, and <u>Cunningham et al.</u>, No. 3:14-CV-20, to **May 1, 2017 at 9:00 a.m.** All other trial dates set during the motion hearing shall remain as scheduled: the trial in <u>Rose</u>, No. 3:15-CV-17 is reset to **May 22, 2017 at 9:00 a.m.**; the trial in <u>Wilkinson, et al.</u>, No. 3:15-CV-274 is reset to **June 5, 2017 at 9:00 a.m.**; the trial in <u>Shelton, et al.</u>, No. 3:15-CV-420 is reset to **June 12, 2017 at 9:00 a.m.**; the trial in <u>Church</u>, No. 3:15-CV-460 is rest to **June 19, 2017 at 9:00 a.m.**; and the trial in <u>Vanguilder</u>, No. 3:15-CV-462 is reset to **June 26, 2017 at 9:00 a.m.**

With regard to other scheduling matters, the dispositive motion deadline for all eight cases is **RESET** to **December 2, 2016**. Because this litigation has been consolidated for discovery and motion practice, a single dispositive motion deadline is more appropriate. Moreover, a final pretrial conference will not be scheduled in any of the cases at this time. Should the District Court determine that such a hearing is necessary, the parties will be notified by a separate notice. Finally, all other deadlines set forth in the District Court's Amended Scheduling Order in each of the eight cases shall remain unchanged.

## III.    Conclusion

For the reasons set forth herein, it is **ORDERED**:

> (1) Defendant Jacobs Engineering Group, Inc.'s Motion for Entry of a Lone Pine Case Management Order ([**Doc. 71**] in <u>Adkisson, et al v. Jacobs Engineering Group, Inc.</u>, No. 3:13-CV-505; [**Doc. 66**] in <u>Thompson, et al., v. Jacobs Engineering Group, Inc.</u>, No. 3:13-CV-666; [**Doc. 46**] in <u>Cunningham et al., v. Jacobs Engineering Group, Inc.</u>, No. 3:14-CV-20; [**Doc. 47**] in <u>Rose v. Jacobs Engineering Group, Inc.</u>, No. 3:15-CV-17; [**Doc. 36**] in <u>Wilkinson, et al., v. Jacobs Engineering Group, Inc.</u>, No. 3:15-CV-274; [**Doc. 34**] in <u>Shelton, et al., v. Jacobs Engineering Group, Inc., et al.</u>, No. 3:15-CV-420; [**Doc. 35**] in <u>Church v. Jacobs Engineering Group,</u>

15

Inc., et al., No. 3:15-CV-460; and [**Doc. 40**] in <u>Vanguilder v. Jacobs Engineering Group, Inc.</u> No. 3:15-CV-462, is **DENIED**;

(2) The trial dates in this matter are **RESET** as follows before the Honorable Thomas A. Varlan, Chief United States District Judge:

- The trial in <u>Adkisson, et al v. Jacobs Engineering Group, Inc.</u>, No. 3:13-CV-505, <u>Thompson, et al., v. Jacobs Engineering Group, Inc.</u>, No. 3:13-CV-666, and <u>Cunningham et al., v. Jacobs Engineering Group, Inc.</u>, No. 3:14-CV-20 is reset to **May 1, 2017 at 9:00 a.m.**;
- The trial in <u>Rose v. Jacobs Engineering Group, Inc.</u>, No. 3:15-CV-17 is reset to **May 22, 2017 at 9:00 a.m.**;
- The trial in <u>Wilkinson, et al., v. Jacobs Engineering Group, Inc.</u>, No. 3:15-CV-274 is reset to **June 5, 2017 at 9:00 a.m.**;
- The trial in <u>Shelton, et al., v. Jacobs Engineering Group, Inc., et al.</u>, No. 3:15-CV-420 is reset to **June 12, 2017 at 9:00 a.m.**;
- The trial in <u>Church v. Jacobs Engineering Group, Inc., et al.</u>, No. 3:15-CV-460 is rest to **June 19, 2017 at 9:00 a.m.**; and
- The trial in <u>Vanguilder v. Jacobs Engineering Group, Inc.</u>, No. 3:15-CV-462 is reset to **June 26, 2017 at 9:00 a.m.**;

(3) The dispositive motion deadline for all eight cases is **RESET** to **December 2, 2016**;

(4) All final pretrial conferences are **CANCELLED** and will not be reset at this time; and

(5) All other deadlines set forth in the District Court's Amended Scheduling Order entered in each of the eight cases shall remain unchanged.

    **IT IS SO ORDERED**.

        ENTER:

        _Bruce Guyton_
        United States Magistrate Judge